**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**RANDY L. ROHRBAUGH,**

        Petitioner,

v.

                                         **CIVIL ACTION NO. 2:09-CV-39**
                                         **CRIMINAL ACTION NO. 2:06-CR-19**
                                         **(BAILEY)**

**UNITED STATES OF AMERICA,**

        Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

I.    <u>Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel. By Local Rule, this action was referred to Magistrate Judge Joel for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Joel filed his R&R on November 15, 2010 [Cr. Doc. 169 / Civ. Doc. 7]. In that filing, the magistrate judge recommended that this Court dismiss the original § 2255 petition [Cr. Doc. 107 / Civ. Doc. 1], the first amended § 2255 petition [Cr. Doc. 146 / Civ. Doc. 4], and the second amended § 2255 petition [Cr. Doc. 149-1].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or

1

recommendation to which no objections are addressed.  **Thomas v. Arn**, 474 U.S. 140,

150 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo*

review and the right to appeal this Court's Order.  28 U.S.C. § 636(b)(1);  **Snyder v.**

**Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91,

94 (4th Cir. 1984).  Here, objections to Magistrate Judge Joel's R&R were due within

fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the

Federal Rules of Civil Procedure.  On November 30, 2010, however, this Court granted the

petitioner an extension until December 14, 2010 [Cr. Doc. 173].  Again, on December 10,

2010, this Court granted the petitioner another extension until January 1, 2011 [Cr. Doc.

180].  The petitioner filed his Objections to the R&R on January 10, 2011 [Cr. Doc. 182].

Despite the untimeliness of the Objections, this Court will review the R&R under a *de novo*

standard.

II.      Factual and Procedural History

         A.      The Petitioner's Pre-Charge Conduct

         On July 20, 2005, the West Virginia State Police ("WVSP") executed a state court

search warrant on the petitioner's residence in Dry Fork, Tucker County, West Virginia.

The WVSP seized three large clear bags of marijuana and three firearms despite the

petitioner's status as a convicted felon.  ([Cr. Doc. 74] at ¶ 30).  Facing potential federal

prosecution, the petitioner agreed to become a confidential informant.  (Id. at ¶ 32).

However,  the  petitioner  thereafter  had  serious  criminal  involvement  with  a

methamphetamine distribution for a Florida drug organization.  (Id. at ¶ 33).  Specifically,

this drug organization "fronted" the petitioner between 1.5 and 5 kilograms of substances

containing  methamphetamine,  meaning  that  the  petitioner  agreed  to  pay  the  drug

2

organization only after he first earned enough money by selling the "fronted" methamphetamine. (Id.). In the Fall of 2005, having not sold all of the methamphetamine, the petitioner was unable to pay the drug organization the nearly $100,000.00 owed. (Id.). As a result, in November 2005, the drug organization sent two couriers from Florida to Tucker County, West Virginia, to collect from the petitioner. (Id.).

Unable to pay the couriers who were on their way to West Virginia, and with fear of prosecution for the drugs and firearms seized on July 20, 2005, the petitioner concocted a scheme to implicate the couriers as part of his promised assistance as a confidential informant. (Id. at ¶ 34). The petitioner informed the WVSP that the two drug couriers would be arriving in West Virginia with a large quantity of methamphetamine and agreed to work with the WVSP to apprehend the couriers. (Id.). In early November 2005, the drug couriers arrived in West Virginia only to collect the money owed by the petitioner. The couriers were not in possession of methamphetamine. (Id. at ¶ 35). As part of his scheme, the petitioner planted the remaining "fronted" methamphetamine in the drug couriers' vehicle and then tipped off the WVSP that the couriers were at Winwood Inn Motel in Canaan Valley, Tucker County, West Virginia. (Id.).

On November 8, 2005, the WVSP executed a federal search warrant on the hotel room and arrested the drug couriers. (Id. at ¶ 36). As the petitioner predicted, the WVSP found packages of methamphetamine very professionally packed and well hidden in the couriers' vehicle. (Id.). In their interviews with the WVSP, the couriers denied any knowledge of the methamphetamine in their vehicle. Instead, the couriers asserted that they had merely come to West Virginia to collect the money the petitioner owed to the Florida drug organization. (Id. at ¶ 38).

3

After hearing testimony before the Grand Jury, the Government started to believe that the drug couriers were being truthful regarding the methamphetamine seized from their vehicle and began to suspect the petitioner's involvement.  (Id. at ¶ 39).  The Government immediately investigated the matter and obtained a confession from the petitioner.

B.      Information through Sentencing

1.      Information

On July 13, 2006, the petitioner was charged in a one-count Information with conspiracy to possess with intent to distribute and to distribute more than 500 grams of substances containing methamphetamine, also known as "crank," from 2000 to November 8, 2005.  ([Cr. Doc. 3] at 1).  The Information also contained a forfeiture allegation for the proceeds of the drug conspiracy, including a sum of $250,000.00 and the "Old Mallow Farm" located on approximately seven (7) acres in Tucker County, West Virginia.  (Id. at 2).

2.      Plea Agreement

On the same day, the petitioner pled guilty to the charge, and admitted to the forfeiture allegation, in the Information [Cr. Doc. 6].  Conditioned upon the defendant being forthright and truthful, not engaging in any bond violation or unlawful behavior, and not obstructing the administration of justice, the Government promised to "make the following **nonbinding** recommendations:"

A.      The United States will recommend a <u>two-level reduction</u> for "acceptance of responsibility," pursuant to Guideline 3E1.1;

B.      The United States will recommend an additional <u>one-level reduction</u> for "timely acceptance," provided the requirements of Guideline 3E1.1(b) are met, including the requirement that the defendant's base offense level be sixteen (16) or greater;

4

C. The United States will recommend the <u>minimum fine</u>;

D. The United States will recommend that any sentence of <u>incarceration should be at the lower end</u> of the applicable guideline range;

E. If the defendant is sentenced to incarceration, the United States will not object to a defense request for intensive drug rehabilitation[; and]

F. The United States will urge the Court to modify the defendant's bond so he can remain on a personal recognizance bond and attempt to substantially assist authorities in the Northen District of West Virginia. As well, the United States will ask the Court to delay any pre-sentence investigation and sentencing, while the defendant attempts such substantial assistance, all in his pursuit of relief under Guideline 5K1.1 (Guideline downward departure) and/or Title 18, United States Code, Section 3553(e) (relief from statutory mandatory minimum sentence).

([Cr. Doc. 6] at ¶ 13) (emphasis in original).

The plea agreement also contains an a waiver of the petitioner's right to appeal or collaterally attack his sentence as well as a stipulation that the total drug relevant conduct was more than 1.5 kilograms but less then 5 kilograms of a substance containing methamphetamine. (Id. at ¶¶ 14, 17).

3. <u>Plea Hearing</u>

At his July 13, 2006, plea hearing, the Court asked the Government to summarize the terms of the plea agreement. ([Cr. Doc. 121] at 17). The Court then deferred a decision of accepting or rejecting the plea agreement, and its nonbinding recommendations, until it reviews the presentence investigation report ("PSR"). (Id. at 24). After the Court specifically referenced the parties' stipulation to the relevant drug conduct, the petitioner stated that he understood and agreed with the terms of the plea agreement. (Id. at 24-25). The petitioner also stated that nothing further had been agreed to, either orally or in writing, that was not contained in the plea agreement. (Id. at 25). The petitioner

and his counsel then stated the petitioner understood the consequences of his plea of guilty. (Id. at 26). The Court then addressed the petitioner's waiver of his rights to appeal his conviction or sentence. (Id. at 30-31). The petitioner stated that he understood that waivers of appellate rights are generally enforceable, but that he could nevertheless present a theory to the appellate court that his was unforceable. (Id. at 31). With regard to the forfeiture allegation, the petitioner stated that he understood the property listed are proceeds obtained from the drug conspiracy. (Id. at 33). After offering no objection to the Government's factual basis, the petitioner stated that his plea of guilty was not the result of any threats, coercion, or harassment, nor was his plea of guilty the result of any promises or inducements not contained in the plea agreement. (Id. at 39). As for his counsel, the petitioner stated that his representation had been adequate and that counsel had not left anything undone. (Id. at 40). Based upon the evidence presented, the Court concluded that the petitioner's plea of guilty had been freely and voluntarily made and that a factual basis existed for the plea. (Id.). Accordingly, the Court accepted the petitioner's plea of guilty. (Id.).

The Court directed the United States Probation Office ("USPO") to "begin the presentence investigation but to forego any aspect of the investigation which might jeopardize any criminal investigations in which the Defendant may participate and until the further order of the Court . . .." (Id. at 42). The Court ordered the Government to keep the Court advised as to the status of any criminal investigations in which the petitioner participates so that the Court would know when to direct the USPO to complete the remainder of the PSR. (Id. at 43). After hearing from both counsel, the Court then ordered the petitioner released on a personal recognizance bond. (Id. at 46). In this regard, the

defendant stated that he understood that any use of a narcotic drug or other controlled substance while on release would constitute a violation of his conditions of release. (Id. at 47).

### 4.   First Bond Violation:  Domestic Dispute

Shortly after leaving the plea hearing, the petitioner became involved in an altercation with his seven months pregnant girlfriend wherein the petitioner smashed out her driver side window with a flashlight. ([Cr. Doc. 13] at 3). On July 14, 2006, the USPO petitioned the Court to issue a warrant to bring the petitioner before the Court to show cause for why his bond should not be revoked. (Id. at 2). The Court issued an arrest warrant [Cr. Doc. 14] and ordered that a bond revocation hearing be held before Magistrate Judge Kaull on July 24, 2006 [Cr. Doc. 16]. Despite the Government's request that the petitioner be continued on release on bond to provide substantial assistance, the magistrate judge found probable cause of a violation, revoked bond, and remanded the petitioner into custody pending a final hearing. ([Cr. Doc. 20] at 2, 5). At the August 10, 2006, final hearing, the Government moved the Court to release the petitioner into the custody of the WVSP for a period of twelve (12) hours on August 17, 2006, for the purpose of performing substantial assistance. ([Cr. Doc. 25] at 1). After hearing from both parties, the Court granted the motion and ordered that the petitioner be released as requested, but prohibited the petitioner from ingesting any controlled substance. (Id. at 2). While on release, the petitioner successfully made controlled buys from three different local drug dealers. ([Cr. Doc. 29] at ¶ 10).

On August 21, 2006, the Government again moved for the petitioner's release on bond, with electronically monitored home incarceration, to perform substantial assistance

[Doc. 29]. After a hearing, the Court ordered the release, but again prohibited the petitioner from using any controlled substances [Cr. Doc. 31]. Over the next seven months, the petitioner made approximately eighty-one (81) controlled buys. ([Cr. Doc. 33] at ¶ 3). As a result, on March 21, 2007, the Government moved to modify the petitioner's conditions of release to replace the home confinement condition with a curfew. ([Cr. Doc. 33] at 3). On the same day, the Court granted the Government's motion [Cr. Doc. 34] and amended the petitioner's conditions of release as requested [Cr. Doc. 35].

### 5. Second Bond Violation: Tampering with Drug Testing

On May 29, 2007, however, the USPO found the petitioner tampering with the accuracy of his drug testing by utilizing a "whizinator," which can "best be described as a [sic] athletic supporter strap with a prosthetic penis and a pouch which holds synthetic urine." ([Cr. Doc. 41] at 2). After the device was confiscated, the petitioner tested presumptively positive for the use of opiates and marijuana. (Id.). The petitioner then admitted that he had used marijuana on at least three occasions and that he had taken a Percocet, prescribed to his mother, for back pain. (Id.). The next day, the USPO petitioned for the issuance of an arrest warrant and the revocation of the petitioner's bond. (Id. at 2-3). At a June 12, 2007, hearing, Magistrate Judge Kaull found that the petitioner had violated his conditions of release and ordered the petitioner's bond revoked. ([Cr. Doc. 50] at 3). At that same hearing, the Government moved to unseal the matter and proceed to sentencing [Cr. Doc. 48]. The magistrate judge granted the motion and directed the USPO to prepare a PSR. ([Cr. Doc. 50] at 4).

### 6. Improper Attempt to Sell "Old Mallow Farm"

On August 20, 2007, the Court preliminarily ordered $250,000.00 in proceeds and

the "Old Mallow Farm" forfeited in accordance with the petitioner's plea agreement [Cr. Doc. 53]. Nevertheless, on September 6, 2007, the petitioner's mother, authorized by a power of attorney executed by the petitioner on August 30, 2007, sold the Old Mallow Farm for $20,000.00. ([Cr. Doc. 54] at ¶ 3). As a result, the Government moved for a protective order [Cr. Doc. 54], which the Court granted on October 9, 2007 [Cr. Doc. 55].

7.    Sentencing

On February 11, 2008[1], citing its receipt of the PSR on September 21, 2007, the Court ordered that sentencing be held on April 24, 2008. ([Cr. Doc. 63] at 1-2). At sentencing, the Court heard argument on nine (9) objections from counsel for the petitioner, including one for a downward departure for acceptance of responsibility and another for downward departure in consideration of the petitioner's "amazing" substantial assistance. (See [Cr. Doc. 122] at 4-9). With regard to acceptance of responsibility, the Court stated that it could not ignore the petitioner's post-plea misconduct:

> The Defendant's behavior began only one short day after the entry of his plea of guilty. The very next day, the Defendant was involved in a domestic incident whereby he smashed out the side glass window of another's car. . . . [O]n May 30, 2007, the Defendant was caught tampering with his drug screen . . .. The Defendant did then test positive for the use of marijuana and oxycodone, which use the Defendant also admitted. . . . Perhaps the Defendant's greatest failure to accept responsibility came even later, while the Defendant was in jail after being revoked for the drug screening incident. The Defendant, from jail and through his mother, whom he gave a power of attorney, sold property that the Defendant had already agreed, through is plea agreement, to forfeit to the government as proceeds of his drug conspiracy. Accordingly, without even considering the Defendant's dishonest behavior prior to the entry of his plea when attempting to serve as a confidential informant . . . , the Court cannot find that the Defendant has

---

[1]Three days later, on motion by the Government [Cr. Doc. 64], the Court amended its preliminary order of forfeiture to include three single-wide trailers located at the "Old Mallow Farm." ([Cr. Doc. 65] at 1).

accepted responsibility.

([Cr. Doc. 122] at 8-9).  As for substantial assistance, counsel for the defendant asked that though the Government elected not to move for a sentence reduction, the Court should consider the petitioner's work as a confidential informant.  (Id. at 10-13).

Finding that the petitioner's total offense level was 34 and that his criminal history category was III, the Court calculated a guideline range of 188 to 235 months.  (Id. at 9). After considering the factors in 18 U.S.C. § 3553(a), the Court sentenced the petitioner to 220 months imprisonment.  (Id. at 14).  In imposing a sentence in the middle of the guideline range, the Court specifically considered:  (1) the petitioner's misconduct in planting drugs in the vehicle of the two Florida drug couriers; (2) the petitioner's misconduct while on bond, including the domestic dispute and his tampering with drug testing; (3) the petitioner's attempt to sell the "Old Mallow Farm" despite previously agreeing to forfeiture; and (4) the petitioner's over 100 controlled buys.  (Id. at 14-15).  Regarding forfeiture, the Court incorporated its August 20, 2007, Preliminary Order of Forfeiture [Cr. Doc. 53] as a final order.  (Id. at 18).

Finally, the Court explained that in his plea agreement the petitioner waived his right to appeal his sentence.  (Id.).  After recognizing the waiver's apparent applicability, the Court gave the petitioner an opportunity to request that the Clerk of the Court nevertheless assist him in preparing and filing a notice of appeal.  (Id.).  The petitioner did not so request.  (Id. at 18-20).  The petitioner also did not pursue a direct appeal after his sentencing.

> D.    Collateral Attack

On March 30, 2009, the petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody ("Original Petition") [Cr. Doc. 107]. On June 30, 2009, the Government moved to dismiss the Original Petition [Cr. Doc. 124]. The petitioner responded on July 21, 2009 [Cr. Docs. 131 & 132].

On December 7, 2009, the petitioner filed an amended Motion to Vacate Under 28 U.S.C. § 2255 ("First Amended Petition") [Cr. Doc. 146]. The Government responded on December 14, 2009 [Cr. Doc. 147], and the petitioner replied on December 21, 2009 [Cr. Doc. 148].

On January 6, 2010, the petitioner filed a Motion for Leave to Supplement Amended Motion to Vacate [Cr. Doc. 149] along with an attached Supplemental Motion to Vacate ("Second Amended Petition") [Cr. Doc. 149-1], which the magistrate judge granted on January 13, 2010 [Cr. Doc. 150]. The Government responded on January 27, 2010 [Cr. Doc. 127], and the petitioner replied on February 4, 2010 [Cr. Doc. 153].

On August 25, 2010, the magistrate judge directed the Government to file a supplemental response to more fully address some of the petitioner's § 2255 claims [Cr. Doc. 155], which the Government did on September 10, 2010 [Cr. Doc. 159]. The petitioner replied on November 1, 2010 [Cr. Doc. 166].

On November 8, 2010, despite having been previously advised by the magistrate judge that no further amendments or supplements to his petition would be granted, the petitioner filed a Motion to Supplement ("Third Amended Petition") [Cr. Doc. 167].

In sum, the petitioner alleges six (6) grounds in support of his § 2255 petitions, namely that: (1) the Government breached the plea agreement, (2) the Government coerced his plea of guilty, (3) the Court improperly enhanced his sentence, (4) the Court violated Rule 32 of the Federal Rules of Criminal Procedure, (5) the Court failed to properly

consider the factors in 18 U.S.C. § 3553(a), and (6) his trial counsel was ineffective.

On November 15, 2010, the magistrate judge entered his R&R [Cr. Doc. 169], recommending that the § 2255 petitions be denied on all grounds but one, and ordering that an evidentiary hearing be held on the sole issue of whether the petitioner instructed his counsel to file a notice of appeal.[2] After receiving two extensions, the petitioner filed his Objections [Cr. Doc. 182] to the R&R on January 10, 2011.

III.    Discussion

In his Objections, the petitioner takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the petitioner's arguments for relief discussed above. In so doing, this Court will assume that the petitioner's claims are not barred by the waiver in the plea agreement of his right to collaterally attack his sentence.

**A.     Breach of Plea Agreement**

In his petitions, the petitioner argues that the Government committed several breaches of the plea agreement. In the R&R, the magistrate judge rejected the petitioner's argument, finding, *inter alia*, that his bond violation relieved the Government from fulfilling its promise to make certain sentencing recommendations. The petitioner objects.

"It is settled that a defendant alleging the Government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence." ***United***

---

[2]An evidentiary hearing was held on March 3, 2011, and thereafter, the magistrate judge entered a second R&R [Cr. Doc. 189] on March 10, 2011, recommending that the petitioner's original judgment be vacated and re-entered so that a notice of appeal can be filed. The Government's objections are due on March 28, 2011. Accordingly, disposition of the second R&R will be effectuated by a subsequent Order.

***States v. Snow***, 234 F.3d 187, 189 (4th Cir. 2000). "Plea agreements are grounded in contract law, and both parties should receive the benefit of their bargain. ***United States v. Chase*** 466 F.3d 310, 314 (4th Cir. 2006). The Government breaches the plea agreement when a promise it made to induce the plea goes unfulfilled. *See* ***Santobello v. New York***, 404 U.S. 257 (1971). Because of 'constitutional and supervisory concerns,' the Government is held to a 'greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.' ***United States v. Harvey***, 791 F.2d 294, 300 (4th Cir. 1986). Where an agreement is ambiguous in its terms, the terms must be construed against the Government. ***Id.*** at 303. However, '[w]hile the [G]overnment must be held to the promises it made, it will not be bound to those it did not make.' ***United States v. Fentress***, 792 F.2d 461, 464 (4th Cir. 1986)." ***United States v. Thrash***, 2011 WL 550129, *1 (4th Cir. Feb. 16, 2011).

## 1.    Sentencing Recommendations

First, the petitioner argues that the Government breached the plea agreement by: (1) failing to recommend an acceptance of responsibility departure pursuant to U.S.S.G. § 3E1.1; (2) failing to move for a substantial assistance departure pursuant to U.S.S.G. § 5K1.1; and (3) failing to recommend a sentence at the lower end of his guideline range. This Court disagrees.

Paragraph 13 of the plea agreement provides that, "[i]f the defendant . . . does not engage in a bond violation . . . after signing this agreement . . ., then the United States will make the following **nonbinding** recommendations:"

    A.    The United States will recommend a <u>two-level reduction</u> for "acceptance of responsibility," pursuant to Guideline 3E1.1;

B.     The United States will recommend an additional <u>one-level reduction</u> for "timely acceptance," provided the requirements of Guideline 3E1.1(b) are met, including the requirement that the defendant's base offense level be sixteen (16) or greater;

. . .

D.     The United States will recommend that any sentence of <u>incarceration should be at the lower end</u> of the applicable guideline range;

. . .

F.     The United States will urge the Court to modify the defendant's bond so he can remain on a personal recognizance bond and attempt to substantially assist authorities in the Northern District of West Virginia. As well, the United States will ask the Court to delay any pre-sentence investigation and sentencing, while the defendant attempts such substantial assistance, all in his pursuit of relief under Guideline 5K1.1 (Guideline downward departure) and/or Title 18, United States Code, Section 3553(e) (relief from statutory mandatory minimum sentence).

([Cr. Doc. 6] at ¶ 13).

As the above-quoted "if-then" language indicates, the Government's promise to make these sentencing recommendations was conditioned upon the petitioner not engaging in a bond violation. However, the petitioner cannot, and does not, argue that he satisfied that condition. Thus, insofar as the petitioner violated his bond, as detailed above, the Government was not obligated to make the quoted sentencing recommendations. Accordingly, the petitioner has failed to establish a breach of the plea agreement based upon the grounds that the Government failed to recommend an acceptance of responsibility departure, failed to move for a substantial assistance departure, or failed to recommend a sentence at the lower end of his guideline range.

## 2.    Other Promises

The petitioner also argues that the Government breached the plea agreement by:

(1) failing to take care of a July 20, 2005, incident; (2) failing to take care of an outstanding warrant in Polk County, Florida; and (3) failing to provide him and his family protection by way of a name change or the witness protection program. This Court disagrees.

The plea agreement makes absolutely no reference to any of these alleged promises. See Cr. Doc. 6. Furthermore, parties agreed that the plea agreement "constitute[d] the entire agreement between [him] and the United States . . . [and that] [t]here [we]re no agreements, understandings or promises between the parties other than those contained in th[e] agreement." ([Cr. Doc. 6] at ¶ 6). Similarly, at the plea hearing, the petitioner agreed that nothing further had been agreed to, either orally or in writing, that was not contained in the plea agreement. ([Cr. Doc. 121] at 25). Therefore, the Government could not have breached the plea agreement by allegedly not fulfilling a promise not contained in the plea agreement. Accordingly, the petitioner has failed to establish a breach of the plea agreement based upon the grounds that the Government failed to take care of a July 20, 2005, incident; failed to take care of an outstanding warrant in Polk County, Florida; or failed to provide him and his family protection by way of a name change or the witness protection program.

**B.    Voluntariness of Plea of Guilty**

In his petitions, the petitioner argues that the Government coerced him into agreeing to plead guilty by threatening to prosecute the mother(s) of his children if he did not accept the plea. In the R&R, the magistrate judge rejected the petitioner's argument, finding that his plea of guilty was not the result of coercion. The petitioner objects.

The Fourth Circuit has refused to invalidate a plea agreement, as coerced, based solely upon the Government's promise not to prosecute a family member if the defendant

would agree to plead guilty. *See Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir. 1982). In those cases, however, the district court is cautioned that "special care must be taken to ascertain the voluntariness of [the] guilty pleas . . .." *Id.* at 837 (quoting *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979)). Finally, the Fourth Circuit has adopted the requirement in *Nuckols* that the Government actually have probable cause to prosecute the family member so as to negate any imputation of fraud. *Id.*

First, this Court finds that the *Nuckols* requirement is satisfied under the circumstances of this case. It is apparent that at least one of mothers of the petitioner's children resided with him during the course of the five-year methamphetamine distribution conspiracy. In light of the large amounts of drugs and unexplained income as well as firearms and other property purchased with drug proceeds during that time, this Court finds that the Government had probable cause to believe the mother had sufficient criminal involvement in the conspiracy to negate any imputation of fraud.

Second, this Court finds no indication that the petitioner's plea of guilty was involuntary. In fact, at his plea hearing, the petitioner stated that his plea was not the result of any threats, coercion, or harassment. ([Cr. Doc. 121] at 39). The petitioner further stated that his plea was not the result of any promises or inducements other than those contained in the plea agreement. (Id.); *see Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). The petitioner's plea agreement contains no reference to any promise by the Government not to prosecute the mother(s) of the petitioner's children. See Cr. Doc. 6. Accordingly, the petitioner has failed to establish that his plea of guilty was involuntary.

### C.    Improper Sentence Enhancement

In his petitions, the petitioner argues that the Court miscalculated his Criminal History Category and the relevant drug conduct. In the R&R, the magistrate judge rejected the petitioner's argument, finding that both calculations had been properly made. The petitioner objects.

### 1.    Criminal History Category

Specifically, the petitioner argues that the Court miscalculated his Criminal History Category because: (1) he received one (1) criminal history point for a prior petit larceny charge in Tucker County, West Virginia, a charge which had no case number; and (2) he received two (2) criminal history points for committing the instant offense while on probation for a prior offense. This Court disagrees.

In Paragraph 73 of the PSR, the probation officer recommended that one criminal history point be added for a petit larceny charge to which the petitioner pled guilty and was sentenced to 1-5 years probation. ([Cr. Doc. 74] at ¶ 73). That no case number could be located is irrelevant. The probation officer was able to discover the sentencing court, the date of sentencing, and the sentence imposed. Accordingly, the Court properly adopted the one-point calculation pursuant to U.S.S.G. § 4A1.1(c) as a prior sentence not constituting a term imprisonment of at least sixty (60) days.

In Paragraph 78 of the PSR, the probation officer recommended that two criminal history points be added because the petitioner was on probation in Polk County, Florida, at the time the instant offense was committed. ([Cr. Doc. 74] at ¶ 78). According to the Information, the instant offense was committed from "on or about 2000 to on or about November 8, 2005 . . .." ([Cr. Doc. 3] at 1). Paragraph 76 of the PSR reflects that the

17

petitioner was placed on probation in Polk County, Florida, for one year on October 15, 2003. That paragraph further reflects that the term of probation was extended on June 17, 2004, for two additional years. ([Cr. Doc. 74] at ¶ 76). Accordingly, the Court properly adopted the two-point calculation pursuant to U.S.S.G. § 4A1.1(d) because "the defendant committed the instant offense while under [a] criminal justice sentence, including probation . . .."

### 2. Relevant Drug Conduct

Next, the petitioner argues that the Court erroneously calculated the relevant drug conduct. This Court disagrees.

First, In Paragraph 14 of the plea agreement, the parties stipulate to the relevant drug conduct to which the petitioner now objects. ([Cr. Doc. 6] at ¶ 14). Second, at the plea hearing, the petitioner not only failed to object to the Government witness' detailed testimony on the issue, he also expressly testified that he had no additions or corrections to the witness' testimony. ([Cr. Doc. 121] at 38). Finally, at sentencing, the petitioner failed to object to his PSR concerning the drug amount calculation issue. ([Cr. Doc 74] at 43-51). Accordingly, the petitioner has failed to establish a meritorious challenge to the relevant drug conduct adopted at sentencing.

### D. Rule 32

In his petitions, the petitioner argues that the Court violated Rule 32 of the Federal Rules of Criminal Procedure. In the R&R, the magistrate judge rejected the petitioner's argument, finding no violation of Rule 32. The petitioner objects.

### 1. Summary of Information Excluded from PSR

First, the petitioner alleges a violation of Rule 32(i)(1)(B) because the Court "did not

provide . . . [him] a wrtten [sic] summery [sic] or summerize [sic] in comera [sic] any information excluded from the PSI [sic] ON [sic] which the court did rely on in sentencing so movant would have a reasonable opportunity to comment on the information. Reguarding [sic] 'the old Mallow Farm' for one."  ([Cr. Doc. 107] at 11).

Pursuant to Rule 32(i)(1)(B), a sentencing court "must give to the defendant and an attorney for the government a written summary of – or summarize in camera – any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and given them a reasonable opportunity to comment on that information."  Fed. R. Cr. P. 32(i)(1)(B).  Rule 32(d)(3) requires the PSR to exclude "any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;" "any sources of information obtained upon a promise of confidentiality;" and "any other information that, if disclosed, might result in physical or other harm to the defendant or others."  Fed. R. Cr. P. 32(d)(3).

Here, the petitioner provides no specifics in support of a violation of Rule 32(i)(1)(B) other than "'the old Mallow Farm' for one."  However, the "Old Mallow Farm" is clearly not one of the types of exclusions contemplated by Rule 32(d)(3).  Accordingly, the petitioner has failed to establish a violation of Rule 32(i)(1)(B).

### 2.    Allocution

Second, the petitioner alleges a violation of Rule 32(i)(4)(A)(ii) because the Court did not provide him a reasonable opportunity to allocute.  Specifically, the petitioner states that, if given that opportunity, he would have explained that his mother sold the "Old Mallow Farm" and kept the money and that he should not be punished for his mother's actions. (See [Cr. Doc. 135] at 3).  Further, the petitioner states that he would have informed the

Court of "two more pieces of property that he paid a lot more than that for that he would have been willing to give up to resulve [sic] the misunderstanding[.]" ([Cr. Doc. 109] at 25-26).

Pursuant to Rule 32(i)(4)(A)(ii), a sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . .." Fed. R. Cr. P. 32(i)(4)(A)(ii). As the magistrate judge noted, "[a] review of the sentencing transcript technically supports petitioner's allegation that the Court did not offer him the opportunity to allocute[.]" ([Cr. Doc. 169] at 29). However, the magistrate correctly recognized, that absent aggravating circumstances (such as the sentencing court's ignorance of the relevant facts), a district court's failure to allow an opportunity for allocution is not subject to habeas review. (Id.) (citing **Ashe v. United States**, 586 F.2d 334, 336 (4th Cir. 1978)).

In the instant case, there are no aggravating circumstances, as the sentencing judge could not have been more aware of the relevant facts for sentencing. The sentencing judge had presided over the previous hearings, including the plea hearing; and he had reviewed the PSR and two sentencing memoranda by the Government. Moreover, this Court is unpersuaded that the petitioner's proposed allocution would have made any difference in his sentence. The record clearly shows that the petitioner gave his mother power of attorney to sell the "Old Mallow Farm." ([Cr. Doc. 74] at 4). Accordingly, the petitioner has failed to establish a prejudicial violation of Rule 32(i)(4)(A)(ii).

### 3. Appellate Rights

Finally, the petitioner alleges a violation of Rule 32(j)(1)(B) because the Court failed to advise him of his right to appeal his sentence. After the imposition of sentence, a court

is required to "advise the defendant of any right to appeal the sentence." Fed. R. Cr. 32(j)(1)(B).

Here, the sentencing transcript specifically contradicts the petitioner's claim:

THE COURT: . . . In the Plea Agreement that's been before the Court and discussed, addressed by counsel, and the Court, the Defendant agreed to the waiver of certain of his appellate rights. Specifically, in Paragraph 17 of the plea agreement, the Defendant waived his appellate rights to any sentence within the maximum provided by the statute. The waiver would appear applicable. With few exceptions, any Notice of Appeal must be filed within 10 days of judgment being entered in your case. If you are unable to pay the cost of any appeal, you may apply for leave to appeal *in forma pauperis*. If you so request, the Clerk of the Court will assist you and/or your very distinguished and well-trained attorney in preparing and filing a Notice of Appeal in your behalf and/or the Financial affidavit that would accompany your application for leave to appeal *in forma pauperis*.

([Cr. Doc. 122] at 18).

Accordingly, the petitioner has failed to establish a violation of Rule 32(j)(1)(B).

### E.     18 U.S.C. § 3553(a) Factors

In his petitions, the petitioner argues that the Court failed to properly consider the factors in 18 U.S.C. § 3553(a) before imposing his sentence. In the R&R, the magistrate judge rejected the petitioner's argument, finding that the Court had properly considered those factors. The petitioner objects.

Again, the sentencing transcript fully contradicts the petitioner's claim, showing that the Court gave careful consideration to all the facts of the case in applying the § 3553(a) factors:

THE COURT: As the Court has earlier mentioned, while these guideline findings must be considered by the Court, they are now only advisory in nature and the Court may also consider those factors set out in **Title 18, United States Code, § 3553(a)** in sentencing the Defendant. The Court has also received a supplemental sentencing memoranda from the Government and has carefully considered the positions set for therein.

. . .

> THE COURT: . . . After considering the Sentencing Memoranda and the statements filed by the Government and the United States Attorney and the sentencing factors that are set forth in **Title 18, United States Code, § 3553(a)**, the Court finds and determines the Guideline range, as found by the Court, provides an appropriate sentence for the Defendant in this case. After looking carefully at the appropriate factors, it is the judgment of the Court that the Defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 220 months. <u>The Court has sentenced the Defendant to the middle of the – of his applicable guideline range after considering everything before the Court. Based on the Defendant's conduct as a confidential informant before his plea of guilty, wherein the Defendant planted drugs on two individuals in hope of gaining favor with the Government, and like in hopes of getting out of the rather substantial drug debt, and based upon his conduct during pretrial release, including a domestic incident, continued drug use, a rather elaborate scheme to circumvent the drug screening process, and an attempt to knowingly sell out from under the Government property subject to forfeiture, the Court has been inclined to sentence the Defendant to the upper end of the guideline range. However, the Court does not now want to ignore the fact that Defendant did make over 100 buys for the Government. And while the Defendant's conduct in this matter has significantly impacted any favor the Defendant hoped to gain in making the controlled buys, the Court will still consider them and not sentence the Defendant to the upper end of the guideline range. Accordingly, the Court has looked at the middle of the guideline range as an appropriate sentence[.]</u>

([Cr. Doc. 122] at 10, 14-15) (emphasis added).

Clearly, the Court considered the § 3553(a) factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed." See 18 U.S.C. § 3553(a)(1)-(2). Moreover, the petitioner cannot reasonably argue that the Court failed to considered his positive work as a confidential informant. In fact, those over 100 controlled buys convinced the Court to refrain from sentencing the petitioner to the upper end of his guideline range. Accordingly, the petitioner has failed to establish that the Court failed to properly consider the § 3553(a) factors.

22

**F.      Ineffective Assistance of Counsel**

In his petitions, the petitioner argues that his trial counsel was ineffective.  In the R&R, the magistrate judge rejected the petitioner's argument, except the one based upon counsel's failure to file a notice of appeal.  On that issue, the magistrate judge ordered that an evidentiary hearing be held.  The petitioner objects.

The Court will now consider each claim to determine whether the petitioner has demonstrated that: (1) counsel's conduct fell below an objective standard of reasonableness and (2) the petitioner was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1964).  In the case of a plea of guilty, a showing of prejudice requires a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty.  *Hill v. Lockhart*, 474 U.S. 52 (1985).

**1.      Failure to Advise of "Open Plea" Option**

First, the petitioner argues that his counsel was ineffective for failure to advise him of an "open plea" option.  Specifically, the petitioner argues that "at no time during plea negotiations did counsel advised [him] that he had an alternate 'route' to take.  He could have taken an open plea in which would [sic] have entitled him to a 3 level reduction for acceptance of responsibility."  ([Cr. Doc. 149-1] at 1).  The petitioner also argues that the "open plea" would have given him an opportunity for a sentence reduction based upon substantial assistance and would not have required forfeiture.

Even assuming that counsel's conduct was unreasonable, the petitioner has failed to establish prejudice.  The sentence recommendations regarding acceptance of responsibility and substantial assistance were a part of the petitioner's plea agreement. Moreover, the petitioner cannot with good conscience argue that anything other than his

misconduct prevented him from receiving the sentencing recommendations in his plea agreement. Finally, forfeiture is statutorily required based upon conviction, not the plea agreement. See 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to advise him regarding an "open plea."

### 2. Failure to Secure More Beneficial Plea Agreement

Second, the petitioner argues that his counsel was ineffective for failing to secure a more beneficial plea agreement. In support of this claim, the petitioner alleges that: (1) counsel forced him to have his preliminary hearing on the same day as his plea; (2) counsel failed to ask for lab reports, discovery, a sentencing cap, or anything to aid in obtaining a better plea; (3) when both the petitioner and his mother asked counsel about "expunging his criminal history," counsel claimed "it wouldn't help;" (4) counsel failed to challenge his criminal history points calculation; (5) counsel failed to challenge the relevant drug conduct; (6) counsel "failed to help movant with his version of the PSI [sic];" (7) counsel spent an insufficient amount of time with him preparing for his defense, only "two interactions with movant in almost two years, one at the courthouse;" and (8) counsel failed to challenge the Government's breach of the plea agreement. ([Cr. Doc. 169] at 43).

To the extent that this Court has already upheld the criminal history points calculation and the relevant drug conduct, and found no breach of the plea agreement, the petitioner's fourth, fifth, and eighth allegations fail to support a claim of ineffective assistance of counsel. Moreover, this Court finds that the petitioner's first, third, and sixth allegations are vague, conclusory, and insufficiently pled. As such, those allegations fail to support a claim of ineffective assistance of counsel. *See **McFarland v. Scott***, 512 U.S.

24

849, 856 (1994) (habeas petitions must meet heightened pleading requirements).  Finally, the petitioner's second and seventh allegations are unsupported by the record.  For example, at his plea hearing, the petitioner testified that his counsel had adequately represented him and that counsel left nothing undone.  ([Cr. Doc. 121] at 40).  Moreover, the petitioner testified that neither he nor his attorney found any defense to the charge in his Information.  (Id.).  Accordingly, the petitioner has failed to establish a claim for ineffective assistance of counsel based upon counsel's failure to secure a more beneficial plea agreement.

### 3.    Failure to Argue for Departures and Relevant Drug Conduct

Third, the petitioner argues that his counsel was ineffective for failing to argue for sentence departures and less relevant drug conduct.  Specifically, the petitioner argues that counsel should have attempted to protect his rights regarding the plea agreement by arguing for downward departures and challenging the relevant drug conduct.

Again, however, the sentencing transcript contradicts the petitioner's claim.  The petitioner's counsel filed nine objections to the PSR and vigorously argued them at sentencing, including one for downward departure for acceptance of responsibility and another for downward departure based upon the petitioner's "amazing" substantial assistance.  ([Cr. Doc. 122] at 11-13).  Despite counsel's efforts, the Court found that while the petitioner had voluntarily and timely entered his plea of guilty, it could not ignore his post-plea misconduct that was inconsistent with acceptance of responsibility.  (Id. at 8-9).  Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's alleged failure to argue for downward departures.

With regard to the petitioner's allegation that his counsel was ineffective for failing

to challenge the relevant drug conduct, this Court again notes that the petitioner had already stipulated to the drug amount in his plea agreement and failed to challenge testimony on the issue at his plea hearing. ([Cr. Doc 6] at ¶ 14; [Cr. Doc. 121] at 24-25). Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's alleged failure to challenge the relevant drug conduct.

### 4.    Failure to File Notice of Appeal

Finally, the petitioner argues that his counsel was ineffective for failing to "note a timely requested appeal . . .." ([Cr. Doc. 109] at 9). The petitioner asserts that counsel told him he "could not appeal because his plea agreement stated he could not." (Id.). The petitioner further alleges that "after sentencing, counsel led the petitioner on like he was going to help him. Told him to send a letter stating what he needed and what he wanted to do. Counsel ignored several of petitioner's letters and in a phone conversation almost 5 months later, told [petitioner] that he was no longer his problem." (Id. at 10). Attached to his proposed Third Amended Complaint were four affidavits in support of the petitioner's allegation that counsel was aware of his desire to appeal but failed, nevertheless, to effectuate an appeal. ([Cr. Doc. 167-1] at 1-4).

To state an ineffective assistance of counsel claim based upon counsel's failure to file an appeal, a defendant must first prove that counsel was ineffective, and then, that but for counsel's ineffectiveness, an appeal would have been filed. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonably manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. The Fourth Circuit maintains that "an attorney is required to file a

notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." **United States v. Poindexter**, 492 F.3d 263, 273 (4th Cir. 2007).

Upon consideration of the above, Magistrate Judge Joel ordered that an evidentiary hearing be held to determine whether the petitioner instructed his counsel to file an appeal. ([Cr. Doc. 169] at 57). An evidentiary hearing was held on March 3, 2011, at which time testimony was elicited from the petitioner and his former counsel [Cr. Doc. 188]. Finding that counsel did not remain reasonably available to the petitioner during the ten-day appellate period, the magistrate judge issued a second R&R on March 10, 2010 [Cr. Doc. 189], recommending that the petitioner's original judgment be vacated and re-entered so that a notice of appeal can be filed. The Government has until March 28, 2010, to object to the second R&R. Accordingly, whether the petitioner has established an ineffective assistance of counsel claim based upon his counsel's failure to file a notice of appeal will be decided in a subsequent Order of this Court.

### G. Pending Motions

In addition to the petitions, the parties have several motions pending before this Court: (1) the petitioner's Motion to Remand Case to District Court for Evidentiary Hearing for Substantial Assistance [Cr. Doc. 110], filed March 30, 2009; (2) the petitioner's Motion for Appeal by Permission [Cr. Doc. 111], filed March 30, 2009; (3) the Government's Motion to Dismiss [Cr. Doc. 124], filed June 30, 2009; (4) the petitioner's Motion to Obtain Documents, Motion to Obtain Transcripts, and Motion for Enlargement of Time to File Motion to Vacate [Cr. Doc. 142], filed November 30, 2009; (5) the petitioner's Motion to Supplement [Cr. Doc. 167], filed November 8, 2010; (6) the petitioner's Motion for

Transcripts [Cr. Doc. 179], filed December 9, 2010; and (7) the petitioner's Motion for Representation on Appeal [Cr. Doc. 191], filed March 15, 2011.

With regard to the first four motions, the magistrate judge recommends that they be denied as moot in light of its recommendation to deny the petitioner's original, first amended, and second amended petitions as well as its ordering of an evidentiary hearing. Moreover, the magistrate judge recommends that this Court grant the petitioner's Motion to Supplement and deem his petition already supplemented. As stated below, those recommendations will be **ADOPTED**. Accordingly, the first four motions **[Cr. Docs. 110, 111, 124, & 142]** are hereby **DENIED AS MOOT**. In addition, the petitioner's Motion to Supplement **[Cr. Doc. 167]** is hereby **GRANTED**, deemed already supplemented, and will hereafter be referred to as the petitioner's Third Amended Petition.

In his Motion for Transcripts, filed after the first R&R, the petitioner requests the transcripts from proceedings held on July 13, 2006, July 24, 2006, August 20, 2006, and August 22, 2006. ([Cr. Doc. 179] at 2). However, for the same reasons stated in Magistrate Judge Joel's Order Denying Motion for Transcripts [Cr. Doc. 141], the petitioner's motion is hereby **DENIED**. Alternatively, said motion is hereby **DENIED AS MOOT**.

In his Motion for Representation on Appeal, filed after the second R&R, the petitioner requests that the Clerk of the Court file his notice of appeal and asks this Court to appoint him an attorney to aid in his appeal. ([Cr. Doc. 191] at 1-2). Both requests, however, must be denied. The petitioner's first request is premature in that this Court has yet to adopt the magistrate judge's second R&R. In the event of adoption, this Court will direct the Clerk of the Court to file the petitioner's notice of appeal. The petitioner's second request is

procedurally improper insofar as the petitioner must request appointment of appellate counsel from the Fourth Circuit. Accordingly, this Court hereby **DENIES** the petitioner's Motion for Representation on Appeal **[Cr. Doc. 191]**.

IV.    <u>Conclusion</u>

Upon careful review of the report and recommendation, it is the opinion of this Court that the magistrate judge's first R&R **[Cr. Doc. 169 / Civ. Doc. 7]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report.

Accordingly, the petitioner's original § 2255 petition **[Cr. Doc. 107 / Civ. Doc. 1]**, first amended § 2255 petition **[Cr. Doc. 146 / Civ. Doc. 4]**, and second amended § 2255 petition **[Cr. Doc. 149-1]** are hereby **DENIED** for the same reasons stated above. However, at this procedural posture, the petitioner's third amended complaint **[Cr. Doc. 167] MAY PROCEED** to the extent that it alleges an ineffective assistance of counsel claim based upon counsel's failure to file a notice of appeal. The success of that claim will depend upon whether this Court adopts the magistrate judge's second R&R **[Cr. Doc. 189]**, by subsequent Order. Finally, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that the petitioner has failed to make "a substantial showing of the denial of a constitutional right," as to those claims dismissed. 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** March 24, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE